**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SHANNON D. LOY, | ) | CASE NO. 5:24-CV-02239-PAG |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY, | ) | CARMEN E. HENDERSON |
| | ) | |
| Defendant, | ) | **REPORT & RECOMMENDATION** |
| | ) | |

**I. Introduction**

Plaintiff, Shannon Loy ("Loy" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons below, it is recommended that the Court REVERSE the Commissioner of Social Security's nondisability finding and REMAND this case to the Commissioner and the administrative law judge under Sentence Four of § 405(g).

**II. Procedural History**

On April 11, 2022, Claimant filed applications for DIB and SSI, alleging a disability onset date of April 8, 2022. The applications were denied initially and upon reconsideration, and Loy requested a hearindg before an administrative law judge ("ALJ"). On October 12, 2023, an ALJ held a hearing, during which Loy, represented by counsel, and an impartial vocational expert testified. On November 17, 2023, the ALJ issued a written decision finding Claimant was

1

not disabled. (ECF No. 8, PageID #: 50–72). The ALJ's decision became final on October 31, 2024, when the Appeals Council declined further review. (*Id*. at PageID #: 37).

On December 26, 2024, Claimant filed her Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 9, 12, and 14). Claimant asserts the following assignment of error:

> The ALJ erred at Step Five (5), by finding other occupations in the national economy were available, despite contradictory vocational expert testimony and the final RFC. Therefore, the ALJ failed to meet his burden at Step 5, resulting in a decision that was not supported by substantial evidence.

(ECF No. 9 at 1).

### III. Background

#### A. Relevant Hearing Testimony

The vocational expert testified at the hearing before the ALJ on October 12, 2023. The ALJ posed the following hypothetical:

> consider an individual that can lift, carry, push and pull 20 pounds occasionally and ten frequently. For this question, the individual can sit for six hours, stand and/or walk for six hours in a normal workday. The hypothetical individual cannot climb ladders, ropes, or scaffolds. And can occasionally climb ramps and stairs. Can frequently stoop and can occasionally kneel, crouch, and crawl.
> The hypothetical individual would be limited to simple, routine tasks that involve no more than simple work-related decision-making. The hypothetical individual is limited to occasional and superficial interaction with others with superficial defined as work that does not involve arbitration, negotiation, or confrontation. The hypothetical individual cannot direct the work of others or be responsible for the safety or welfare of others.
> The hypothetical individual cannot perform assembly line work or work that involves strict production quotas. The hypothetical individual is limited to occasional workplace changes that are gradual and explained in advance.

(ECF No. 8, PageID #:100–1). The vocational expert identified three light level jobs that would be available to the hypothetical individual: a cleaner housekeeper; a routing clerk; and a marker. (*Id*. at PageID #: 101). The vocational expert stated that her testimony was "consistent with the DOT" but supplemented by her "education, training, and experience regarding the parts of the

2

hypothetical that concern…the occasional and superficial interactions with others…" (*Id.* at PageID #: 102).

On cross-examination, counsel for Claimant had the following exchange with the vocational expert:

> Q  For these positions that you indicated for that first hypothetical, these unskilled occupations, do they usually have a probationary period?
>
> A  Oh usually. It would be very short-term in these situations so probably a month.
>
> Q  Okay. And during that month in time period, you would agree that…the claimant would likely have frequent and ongoing contact with supervisors and/or coworkers?
>
> A  Not necessarily always coworkers at the frequent level. More so the supervisors.

(ECF No. 8, PageID #: 103–04). Following a disagreement between the ALJ and Claimant's counsel regarding the vocational expert's testimony, the ALJ asked the following follow-up questions:

> Q  Ms. Klier, did you say frequent contact with the supervisor during a probationary period?
>
> A  I did not, Your Honor.
>
> Q  Okay. And a probationary period at SVP: 2, you indicated could be up to a month but it could also be less than a day. Is that correct?
>
> A  That's correct.
>
> Q  Or a training period, rather, not a probationary period?
>
> A  Correct.
>
> Q  And a training period is the period during which the individual would have more contact, not necessarily a probationary period. Is that correct?
>
> A  It depends, yeah, that's correct. Because it really depends on the employer how they want to use it. Some use the training period in constant with the probationary periods so it's kind of interchangeable if that makes sense.

3

> Q All right.
>
> A And then some.

(*Id*. at PageID #: 107). Claimant's attorney did not ask the vocational expert any other questions.

### B. Relevant Medical Evidence

Claimant's position is that she is entitled to benefits or that the matter requires remand based on the vocational expert's testimony. This Court will include any relevant medical evidence in its analysis.

## IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

> 5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with certain restrictions. Specifically, the claimant can never climb ladders, ropes or scaffolds but can occasionally climb ramps and stairs; she can frequently stoop and occasionally kneel, crouch, and crawl; she can perform simple, routine tasks that involve no more than simple work-related decision making; she can have occasional and superficial interaction with others, with superficial defined as work that does not involve arbitration, negotiation or confrontation; she cannot direct the work of others or be responsible for the safety or welfare of others; she cannot perform assembly line work or work that involves strict production quotas; and, she is limited to handling occasional workplace changes that are gradual and explained in advance.

(ECF No. 8, PageID #: 59).

> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

(*Id*. at PageID #: 65).

> 11. The claimant has not been under a disability, as defined in the Social Security Act, from April 8, 2022, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(*Id.* at PageID #: 66).

## V. Law & Analysis

A. **Standard of Review**

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (en banc)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

B. **Standard for Disability**

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the

national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C. Discussion

Claimant raises a single issue on appeal: whether the ALJ's Step Five determination is supported by substantial evidence when he found that other occupations in the national economy were available, despite an unresolved conflict between the vocational expert testimony and the DOT. The Commissioner argues that there is no unresolved conflict because after identifying a potential conflict the vocational expert "appropriately resolved it by relying on her education, training, and experience." (ECF No. 12 at 7). Additionally, the Commissioner argues that the ALJ properly explained his rationale for rejecting Claimant's argument about the possible conflict.

#### 1. The ALJ Erred at Step Five.

The ALJ determined that Claimant could have no more than occasional and superficial contact with supervisors and coworkers. At the hearing, the vocational expert testified that any of the jobs that a hypothetical person with the abilities and limitations that the ALJ ultimately found were appropriate for Claimant would require a probationary period lasting up to thirty days. The vocational expert also testified that during this period, an individual may be required to have more than occasional contact with a supervisor. Accordingly, Claimant argues that because she could have no more than occasional contact with supervisors and coworkers, she

6

would be unable to complete the probationary period and therefore be unable to sustain employment. Claimant argues that "No occupations are available to [her] under the final RFC set by the ALJ at step four (4), therefore benefits should have been awarded; or at a minimum, there is testimony leading to unresolved issues that need to be dealt with by remand and another hearing." (ECF No. 9 at 6). The Commissioner argues that the vocational expert only posed the *possibility* of more than occasional contact being required and that the ALJ considered but rejected Claimant's argument regarding unresolved conflict between the RFC and the vocational expert's testimony. (ECF No. 12 at 6–8).

"When there is an apparent unresolved conflict between [vocational expert]... evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the [vocational expert]... evidence to support a determination or decision about whether the claimant is disabled." SSR 00-4p, 2000 WL 1898704.

In consideration of the ALJ's hypothetical that limited the individual to "occasional and superficial interaction with others", the vocational expert identified three occupations available to the individual: a cleaner housekeeper; a routing clerk; and a marker. (ECF No. 8, PageID #: 101). The vocational expert stated that her testimony was "consistent with the DOT" but supplemented by her "education, training, and experience regarding the parts of the hypothetical that concern…the occasional and superficial interactions with others…" (*Id.* at PageID #: 102).

On cross-examination, counsel for Claimant inquired as to whether the identified occupations usually had a probationary period and the vocational expert stated that typically the probationary period would be a month long. The vocational expert agreed that during that one-month period, the individual would likely have frequent and ongoing contact with supervisors "more so" than with coworkers. (ECF No. 8, PageID #: 103–04). Claimant's counsel then argued to the ALJ that based on the vocational expert's testimony the indicated jobs were not available:

7

> With respect to going back to the question regarding the contact, the hypothetical claimant was limited to occasional contact. The VE indicated that the Claimant would have more than occasional contact during the probationary period with supervisors. Based on that, I would state that those jobs would not be available and she should be found disabled.

(*Id.* at PageID #: 106). The ALJ disagreed with counsel's characterization of the vocational expert's testimony:

> ALJ: Well, I don't think that's what she said. She said she would, she said coworkers wouldn't be an issue. She said more so contact with a supervisor.
>
> ATTY: She indicated specifically that there would be at least frequent contact with supervisors during that probationary period.
>
> ALJ: That's not what she said.
>
> ATTY: (INAUDIBLE)
>
> ALJ: That's not what she said.
>
> ATTY: occasional contact.
>
> ALJ: Counsel, that's not what she said. She said there would not be a problem with coworkers. It would possibly be more so with supervisors. She never said there was frequent contact with the supervisor during that period.

(*Id.*). Following this exchange, the ALJ asked follow-up questions to the vocational expert regarding her previous testimony and the limitation at issue:

> Q Ms. Klier, did you say frequent contact with the supervisor during a probationary period?
>
> A I did not, Your Honor.
>
> Q Okay. And a probationary period at SVP: 2, you indicated could be up to a month but it could also be less than a day. Is that correct?
>
> A That's correct.
>
> Q Or a training period, rather, not a probationary period?
>
> A Correct.
>
> Q And a training period is the period during which the individual would have more contact, not necessarily a probationary period. Is that correct?

8

>A It depends, yeah, that's correct. Because it really depends on the employer how they want to use it. Some use the training period in constant with the probationary periods so it's kind of interchangeable if that makes sense.
>
>Q All right.
>
>A And then some.

(*Id*. at PageID #: 107). Thereafter, during an exchange with Claimant's counsel, the ALJ declared that the vocational expert had cleared up her previous testimony:

>ALJ: All right, Mr. Kasper, follow-up questions?
>
>ATTY: Your Honor, but I did ask, that's the thing, I do believe I know what I asked. I asked whether or not there's going to be ongoing and frequent contact with -- and she and you're right, she did say that not so much with coworkers but she did say with supervisors.
>
>ALJ: She said more so with supervisors. She never said there would be frequent contact with the supervisor during that period. And she just clarified her answer anyway. Do you have additional questions for her?
>
>ATTY: No. Those are all the questions I have, Your Honor.
>
>ALJ: All right. Do you have anything else you want to put on the record today?
>
>ATTY: I'd like to post a post-hearing brief regarding the testimony once we get a transcript of it.
>
>ALJ: All right. So you're going to order a transcript?
>
>ATTY: I will listen to the audio of it, Your Honor.
>
>ALJ: Oh I think we had, I think we agree on what she said and that she clarified the answer.
>
>ATTY: I don't -- Your Honor, I respectfully I disagree. I mean it was after questioning her, I still believe that she still stated that. I mean –
>
>ALJ: Right. But then she clarified.
>
>ATTY: Okay, all right.
>
>ALJ: I mean I'll let you submit a prehearing brief on any issue that you wish. I'm just telling you where that's headed if that's the issue.

9

(ECF No. 8, PageID #: 107–8).

In the ALJ's decision, he explained his decision that significant jobs exist in the national economy, as follows:

> Although the vocational expert's testimony is not fully consistent with the information contained in the DOT, there is a reasonable explanation for the discrepancy.  The DOT does not consider or otherwise account for limitations involving simple and routine tasks, simple decisions, occasional and superficial interactions, no directing work or being responsible for the safety of others, no production quotas, and only occasional changes. These factors and their effects on the jobs as well as on the number of available jobs were based on the vocational expert's years of professional experience, training, and knowledge of the vocational industry.
>
> The claimant, through her representative, contends that the vocational expert's testimony precludes the performance of the above listed jobs.  The vocational expert, according to the claimant, testified that during the probationary/training period of up to 30 days, an individual would have frequent contact with supervisors, more so than with coworkers (15E).  Based on this, the claimant argues that these jobs fall outside the parameters of the hypothetical provided.  However, when further questioned, the vocational expert explained that there would not necessarily be frequent contact but that it could possibly be frequent during the probationary/training period, which she defined as anywhere from less than one day and up to 30 days. Despite this, the vocational expert testified that the claimant could still perform the jobs listed above. I find the vocational expert's testimony to be well taken as it is based on her professional experience, training, and knowledge of the vocational industry.
>
> Based on the testimony of the vocational expert, and considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.

(ECF No. 8, PageID #: 66).

Based on the ALJ's undisputed RFC determination, Claimant is limited to only occasional interaction with others. Although the vocational expert initially testified that a hypothetical claimant with Claimant's RFC could perform the three SVP 2 jobs, the vocational expert later testified that (1) the three identified jobs usually have a probationary period of up to a month; and (2) during that one-month period, the individual would likely have frequent and ongoing contact with supervisors "more so" than with coworkers. The ALJ asked some follow

up questions, but did not resolve the contradiction between the RFC and the vocational expert's testimony. The ALJ incorrectly stated that the vocational expert had clarified her response. When asked by the ALJ whether she had said, "frequent contact with a supervisor during the probationary period" the vocational expert replied that she had not. When, in fact, the vocational expert had agreed with Claimant's counsel that during the probationary period, the individual would likely have frequent and ongoing interaction "more so" with supervisors than coworkers. Upon further questioning by the ALJ, the vocational expert testified that training periods and probationary periods are "kind of" interchangeable and that the contact with other during that period "really depends on the employer". Although the vocational expert testified that the three identified occupations usually have probationary period of up to a month, the ALJ did not ask the vocational expert to identify whether other unskilled SVP 2 position were available that would not require a probationary or training period. After the ALJ debated with Claimant's attorney as to what the vocational expert had said, the vocational expert attempted to speak but was shut down by the ALJ:

> VE: (INAUDIBLE).
>
> ALJ: No, no, no, no you're fine, Ms. Klier. I think we're just going in circles at this point.

(ECF No. 8, PageID #: 10–9). The vocational expert may have tried to resolve the contradiction during her testimony, but the ALJ did not allow it. Thus, the vocational expert did not resolve the contradiction during her testimony. The ALJ's decision does not resolve the issue. The ALJ acknowledged the conflict between the identified jobs and the RFC and wrote that "when further questioned, the vocational expert explained that there would not necessarily be frequent contact but that it could *possibly* be frequent during the probationary/training period, which she defined as anywhere from less than one day and up to 30 days. Despite this, the vocational expert testified that the claimant could still perform the jobs listed above." (*Id.* at PageID #: 66).

11

However, the vocational expert was never asked whether the hypothetical individual could make it through the probationary/training period of the identified jobs given the heightened contact with supervisors that would likely occur during the probationary/training period. *See Kenneth P. v. Saul*, No. 4:19-cv-0059-JMS-DML, 2019 WL 6463449, *6 (S.D. Ind. Dec. 2, 2019) (reversing ALJ's decision based on step five error because "absent from the VE's testimony is any explicit reconsideration of the hypothetical claimant's ability to perform the representative jobs after the issues of instruction and the probationary period were raised). Whether Claimant could "still perform the jobs" is not the issue here. Instead, the ALJ failed to ascertain whether Claimant could complete the necessary probationary period for the indicated jobs. Even if an individual can perform the job, they must first be able to keep the job through a probationary period.

The ALJ's step five determination cannot stand because it ignores the obvious contradiction between Claimant's limitation to only occasional interaction with others and the vocational expert's testimony that the identified jobs would require up to a thirty-day training period during which more than occasional interaction with supervisors would likely occur. The ability to complete a training period or "probationary period is ... tantamount to the ability to keep a job, and as multiple circuits have recognized, the ability to keep a job is a necessary prerequisite to the ability to engage in substantial gainful activity." *Sczepanksi v. Saul*, 946 F.3d 152, 158-59 (2d Cir. 2020).

This conclusion is consistent with several persuasive decisions recognizing that "an ALJ commits reversible error by failing to reconcile her finding that a claimant's RFC permits him to work in the national economy with a vocational expert's testimony that the claimant's limitations preclude him from completing a job's training or probationary period." *Bernard L. v. Saul*, No. 19 CV 1223, 2020 WL 7027637, at *5 (N.D. Ill. Nov. 30, 2020) (discussing *Potrebic v. Berryhill*, Case No. 2:17-cv-00462-JVB-APR, 2019 WL 1397477, at *2 (N.D. Ind. March 27,

2019); *McLaughlin v. Comm'r of Soc. Sec.*, Case No. 3:17-cv-424, 2019 WL 125761 (S.D. Ohio Jan. 8, 2019;[1] *Mosher v. Saul*, Case No. 5:18cv109/EMT, 2019 WL 3779995, at *6 (N.D. Fla. Aug. 12, 2019)("It thus appears that Plaintiff cannot perform the representative occupations identified by the [vocational expert] because she would not be able to maintain employment during the probationary period(s) for these occupations, due to the requirement in her [residual functional capacity (RFC) ] that she miss one day of work per month."); *Kenneth P. v. Saul*, No. 4:19-cv-0059-JMS-DML, 2019 WL 6463449, *6 (S.D. Ind. Dec. 2, 2019) (reversing ALJ's decision based on step five error because "absent from the VE's testimony is any explicit reconsideration of the hypothetical claimant's ability to perform the representative jobs after the issues of instruction and the probationary period were raised)); *Otto v. Saul*, No. 3:20-CV-00060-TPK, 2021 WL 1115351, at *6 (S.D. Ohio Mar. 24, 2021) ("The successful completion of a probationary period is one of many requirements of substantial gainful employment, and the Court sees no reason to treat it differently from any other job requirement which a person seeking to retain employment must be able to perform within the limits of his or her residual functional capacity.").

The Commissioner attempts to distinguish the authority cited by Claimant[2] by declaring that "[h]ere, the vocational expert identified a potential conflict but appropriately resolved it by relying on her education, training, and experience." (ECF No. 12 at 7). The Commissioner

---

[1] *McLaughlin* did not actually decide the question because the Commissioner had conceded error and had moved for remand. However, the same judge later resolved the question in claimant's favor in *McAfee v. Comm'r of Soc. Sec.*, No. 3:19-CV-125, 2020 WL 5810004 (S.D. Ohio Sept. 30, 2020).

[2] Claimant cites: *Sczepanski v. Saul*, 946 F.3de 152, at 155 (2d Cir. 2020); *Sandy C. v. Kijakazi*, 2023 WL 2133835, at *2-3 (S.D. Ind. Feb. 21, 2023): *Bernard L. v. Saul*, 2020 WL 7027637, at *2-3 (N.D. Ill. Nov. 30, 2020); *McLaughlin v. Comm'r of Soc. Sec.*, 2019 WL 125761, at *3 (S.D. Ohio Jan. 8, 2019); *McAfee v. Comm'r of Soc. Sec.*, 2020 WL 5810004, at *4 (S.D. Ohio Sept. 30, 2020); and *Matthew H. v. Comm'r of Soc. Sec.*, 2022 WL 2255376, at *4 (S.D. Ohio June 23, 2022).

argues that based on the vocational expert's testimony, "the ALJ was able to identify over 350,000 jobs that Plaintiff could perform" and that the ALJ "expressly considered but rejected Plaintiff's argument about a possible conflict between the RFC and the vocational expert's testimony, and appropriately explained his rationale for doing so." (*Id*. at 7-8). The Commissioner's distinction is inaccurate. The vocational expert relied on her education, training, and experience when initially stating that certain SVP 2 jobs were available for the hypothetical individual. However, after the issue of more than occasional contact with supervisors during the probationary period was raised, the vocational expert did not reconsider whether the hypothetical individual could complete the probationary period for the designated jobs. Thus, this conflict between the jobs indicated by the vocational expert and the limitations of the hypothetical individual was not resolved. The ALJ acknowledged the conflict in his decision, but did not resolve the issue. The ALJ stated that:

> when further questioned, the vocational expert explained that there would not necessarily be frequent contact but that it could *possibly* be frequent during the probationary/training period, which she defined as anywhere from less than one day and up to 30 days. Despite this, the vocational expert testified that the claimant could still perform the jobs listed above. I find the vocational expert's testimony to be well taken as it is based on her professional experience, training, and knowledge of the vocational industry.

(ECF No. 8, PageID #: 66, Tr. at 37 (emphasis in original)). As explained above, the ALJ's decision misconstrues the hearing testimony. The vocational expert initially based her opinion on her experience, training, and knowledge; however, after agreeing that the SVP 2 probationary period would likely include more than frequent contact with a supervisor, the vocational expert was not asked whether the hypothetical individual could complete the probationary period for the jobs indicated. Even if Claimant would be able to "still perform" the indicated jobs, she must first keep the job through the probationary period. This conflict between the RFC and the vocational expert's testimony has not been resolved.

14

### 2. Remand for further consideration of the unresolved vocational issues regarding the probationary period is the Appropriate Remedy.

Having found that the ALJ committed reversible error at step five, the Court must decide whether to remand the case for further proceedings or for an award of benefits. Claimant argues that the matter should be remanded with instructions to grant benefits or remanded to consider the unresolved vocational issues regarding the probationary period. The Commissioner argues that if an error occurred, remand for further consideration is the appropriate remedy.

This Court finds that a remand for further proceedings, rather than an award of benefits, is the appropriate remedy. The vocational expert did not testify that all SVP 2 level jobs require a 30-day training period during which the individual would be exposed to greater than occasional contact with their supervisor. Rather, the vocational expert testified that SVP 2 positions in general include a training period of "up to 30 days" but that it could be less than one day. The vocational expert further explained that the training period is dependent on the specific job and employer. (ECF No. 8 at PageID #: 107). Although the vocational expert also testified that the probationary/training period for SVP 2 positions would likely require more than occasional contact "more so" with a supervisor, she did not testify about the length of training periods for the cleaner/housekeeping, routing clerk, and marker jobs. Nor did the vocational expert testify whether the limitation to occasional contact with others would preclude working in an SVP 2 position with a shorter training period. (*Id*. at PageID #: 101 (testifying that in addition to the three jobs identified "[t]here would be others as well that fit this hypothetical.")).

Given this gap in the record, this case is closer to *Bassett, Mosher,* and *Sczepanski* than it is to *Bernard L.*, *Matthew H.*, *McLaughlin*, *McAfee*, *Otto*, or *Sandy C.* In *Bassett*, the court ordered a remand because there were unresolved factual issues regarding the vocational expert's testimony about the probationary period for the jobs identified as suitable for Bassett. The ALJ had rejected the vocational expert's testimony about the probationary periods, but both parties

15

agreed that the reasons cited by the ALJ were insufficient. The court found that the testimony at the hearing amounted to unresolved facts, as the vocational expert stated that the timeframe for a probationary period varied depending on the job and employer, and it was unclear whether this applied specifically to the three jobs identified for Bassett. The vocational expert also agreed that a worker would have more than occasional contact with supervisors during training, but Bassett's attorney did not confirm whether this would preclude Bassett from performing the identified jobs. The court concluded that these gaps in the record warranted a remand for further consideration by the Agency. *Bassett*, 2025 WL 798791, at *8; *see also Mosher,* 2019 WL 3779995, at *6-7 (finding that further proceedings were required because, although the vocational expert testified that a person with plaintiff's limitations would not be able to complete the probationary period of an entry-level job, the vocational expert did not testify whether the jobs at issue were, in fact, entry-level or required a probationary period); *Sczepanksi*, 946 F.3d at 161–2 (denying claimant's request to remand solely for calculation of benefits where error occurred at step five and ALJ needed to modify a single aspect of the hypothetical posed to the vocational expert).

In contrast, the vocational experts in *Bernard L.*, *Matthew H.*, *McLaughlin*, *McAfee*, *Otto*, and *Sandy C.* testified that a claimant with those plaintiffs' limitations could not complete the training or probationary periods for the jobs at issue. *See Bernard L*, 2020 WL 7027637, *6; *Matthew H.*, 2022 WL 2255376, at *4–5; *McLaughlin*, 2019 WL 125761, at *3; *McAfee*, 2020 WL 5810004, at *4; *Otto*, 2021 WL 1115351, at *6–7, *Sandy C.*, 2023 WL 2133835, at *5. There was, thus, no factual determination left for the ALJ to make, and an award of benefits was the proper result.

Because the record does not definitively establish that Claimant's RFC precludes her from performing the three SVP 2 positions identified by the ALJ or all SVP 2 positions, an

16

award of benefits is not warranted. Rather, this case should be remanded to the SSA for further proceedings.

## VI. Recommendation

Based on the above, it is RECOMMENDED that the Court REVERSE the Commissioner of Social Security's nondisability finding and REMAND this case to the Commissioner and the ALJ under Sentence Four of § 405(g) with instructions that on remand, the Agency is to consider the unresolved vocational issues regarding the probationary period.

Dated: 9/10/2025

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

---

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within 14 days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).